UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

KERRY ASHDOWN,                                    Index No. 13 CV 1374
                                                  (HB)(GWG)
                          Plaintiff,

              -against-

EQUINOX, *a/k/a*
EQUINOX FITNESS CLUB *and incorporated as*
EQUINOX HOLDINGS, INC.,
MAURO MAIETTA,
LAWRENCE SANDERS, and
MATT PLOTKIN *a/k/a* MATTHEW PLOTKIN,

                          Defendants.
-----------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT
<u>OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**


**LAROCCA HORNIK ROSEN
GREENBERG & BLAHA LLP**
40 Wall Street, 32nd Floor
New York, New York 10005
T:  212.530.4822 / 4837
*Attorneys for Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ……………………………………………………… 1

STATEMENT OF FACTS ………………………………………………………… 3

ARGUMENT……………………………………………………………………… 3

I.   SUMMARY JUDGMENT STANDARDS FOR EMPLOYMENT
     DISCRIMINATION ACTIONS……………………………………………… 3

II.  PLAINTIFF'S CLAIM OF GENDER DISCRIMINATION UNDER
     THE NYC HUMAN RIGHTS LAW MUST BE DISMISSED AS
     A MATTER OF LAW ………………………………………………………… 4

     A.   Plaintiff cannot state a *prima facie* case of gender discrimination………… 4

III. EQUINOX HAD A LEGITIMATE, NON-DISCRIMINATORY
     REASON FOR TERMINATING HER EMPLOYMENT……………………… 6

IV.  PLAINTIFF'S CLAIM OF DISABILITY DISCRIMINATION
     MUST BE DISMISSED AS A MATTER OF LAW………………………… 10

     A.   Plaintiff cannot state a *prima facie* case of disability discrimination… 10

V.   PLAINTIFF CANNOT PROVE DISABILITY DISCRIMINATION
     BECAUSE EQUINOX HAD A LEGITIMATE, NON-DISCRIMINATORY
     REASON FOR TERMINATING HER EMPLOYMENT……………………… 13

VI.  PLAINTIFF'S DISABILITY AND GENER DISCRIMINATION
     CLAIMS ARE PRECLUDED BY THE "SAME ACTOR" INFERENCE…… 14

VII. PLAINTIFF'S CLAIM OF HOSTILE WORK ENVIRONMENT
     UNDER THE NYC HUMAN RIGHTS LAW MUST BE DISMISSED
     AS A MATTER OF LAW…………………………………………………… 15

     A.   Plaintiff Was Not Treated Less Well Than Other Employees
          Because Of Her Gender…………………………………………………… 15

     B.   Plaintiff Was Not Treated Less Well Than Other Employees
          Because Of Her Disability………………………………………………… 17

VIII.   PLAINTIFF'S CLAIM OF AIDING AND ABETTING  GENDER
        DISCRIMINATION UNDER THE NYC HUMAN RIGHTS LAW
        MUST BE DISMISSED AS A MATTER OF LAW………………………….   17

IX.     PLAINTIFF'S CLAIM OF AIDING AND ABETTING A HOSTILE
        WORK ENVIRONMENT UNDER THE NYC HUMAN RIGHTS
        LAW MUST BE DISMISSED AS A MATTER OF LAW……………………   18

X.      PLAINTIFF'S CLAIM OF TORTIOUS INTERFERENCE
        WITH A CONTRACT MUST BE DISMISSED AS A
        MATTER OF LAW…………………………………………………………   19

        A.    Mauro Maietta Did Not Act Outside The Scope of His Authority……   19

XI.     PLAINTIFF'S CLAIM OF TORTIOUS INTERFERENCE WITH THE
        RIGHT TO CONDUCT BUSINESS MUST BE DISMISSED AS A
        MATTER OF LAW…………………………………………………………   20

        A.    Mauro Maietta Did Not Employ "Wrongful Means" In Any
              Of His Actions……………………………………………………   20

CONCLUSION…………………………………………………………………… 21

### TABLE OF AUTHORITIES

**Cases**

*Albert v. Losken,* 239 F.3d 256, 274 (2nd Cir. 2001) .................................................................. 19

*Bernard v. JP Morgan Chase Bank N.A.*, 2010 WL 423102, *6 (S.D.N.Y. Feb 5, 2010) .... passim

*Brown v. The Pension Boards*, 488 F.Supp.2d 395, 405 (S.D.N.Y. 2007) ........................... passim

*Colon v. Trump Intern. Hotel & Tower*, 2011 WL 6092299, *8 (S.D.N.Y. Dec. 7, 2011) .... 14, 15

*Crews v. Trustees of Columbia University in City of New York,* 452 F.Supp.2d 504, 522
     (S.D.N.Y. 2006) ....................................................................................................... passim

*Davis-Bell v. Columbia University*, 851 F.Supp.2d 650, 671 (S.D.N.Y. 2012) ............... 16, 17, 18

*Dixon v. International Federation of Accountants*, 2010 WL 1424007, *6 (S.D.N.Y. Apr. 9,
     2010) ................................................................................................................................. 14

*Donofrio-Ferrezza v. Nier*, 2005 WL 2312477, *17 (S.D.N.Y. Sep. 21, 2005) .......................... 19

*Figueroa v. New York Health and Hospitals Corp.,* 500 F.Supp.2d 224, 236 (S.D.N.Y. 2007) .. 15

*Friedman v. Coldwater Creek, Inc.*, 321 Fed.Appx. 58 (2d Cir. 2009) ................................. 20, 21

*Gioia v. Forbes Media LLC*, 501 Fed.Appx. 52, 55 (2d Cir. 2012) ............................................ 12

*Hart v. New York University Hospitals Center*, 2011 WL 4755368, *6
     (S.D.N.Y. Oct. 7, 2011) ....................................................................................... 6, 10, 13

*Jain v. McGraw-Hill Companies, Inc.*, 827 F.Supp.2d 272 (S.D.N.Y. 2011) ................... 7, 13, 17

*Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002) ............................. 21

*Moccio v. Cornell University,* 889 F.Supp.2d 539, 568-69 (S.D.N.Y. 2012) ....................... passim

*Ortiz-Moss v. New York City Dept. of Transp.*, 623 F.Supp.2d 379, 403 (S.D.N.Y. 2008) ......... 16

*Rosario v. Hilton Hotels Corp.,* 476 Fed.Appx. 900, 902 (2d Cir. 2012) ..................................... 5

*Sullivan v. Brodsky,* 2009 WL 2516838, * 4 (S.D.N.Y. Aug. 17, 2009) ..................................... 19

*Thompson v. Bosswick*, 855 F.Supp.2d 67, 88 (S.D.N.Y. 2012) ................................................ 19

*Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000) ............................................. 3

Defendants Equinox Holdings, Inc. d/b/a Equinox Fitness Club ("Equinox"), Mauro Maietta ("Maietta"), Lawrence Sanders ("Sanders"), and Matthew Plotkin ("Plotkin"), by their attorneys LaRocca Hornik Rosen Greenberg Blaha LLP, respectfully submit this memorandum of law in support of their motion for summary judgment for an Order dismissing each and every claim for relief asserted against them by plaintiff Kerry Ashdown.

## PRELIMINARY STATEMENT

Following plaintiff's termination from her employment as a Personal Training Manager at Equinox's Soho fitness club for stealing, plaintiff brought this specious action alleging a plethora of alternative legal and factual theories against Equinox and a number of its employees as to why her employment was unlawfully terminated.  Equinox immediately was able to dismiss several of these claims outright in a motion to dismiss, as well as all of the claims she asserted against certain of the individual defendants.

Currently remaining is a number of equally baseless and contrived claims that Equinox now seeks to dismiss as well.  The claims—which include gender and disability discrimination, hostile work environment, and tortious interference claims—all must be dismissed because there is no competent evidence or any proof whatsoever that contradicts the clear and unequivocal evidence showing that Equinox had a legitimate, non-discriminatory basis for terminating plaintiff's employment; namely, its well supported determination that plaintiff was stealing.

In fact, Equinox conducted its own investigation and came to the inescapable conclusion that plaintiff was the only person who could have committed the theft.  Specifically, it was discovered that plaintiff was reinstating expired personal training sessions of current or former health club members by unlawfully and fraudulently accessing Equinox' proprietary computer system and then "pulling" i.e., crediting performance of the personal training sessions—***which***

***indisputably were never performed for the clients***—to herself and to the accounts of two other personal trainers--this so that she and these other trainers would receive commission payments that they were not otherwise entitled to receive under their compensation packages at Equinox.

In a thorough two week internal investigation by Equinox, it was revealed that the expired personal training sessions were reinstated and pulled using two individualized cashier codes—one belonging to plaintiff and one belonging to plaintiff's subordinate, Cornelia Hobbie. Importantly, the investigation revealed plaintiff to be ***the only person*** who had access to both of these cashier codes.  Furthermore, it was revealed through an analysis of video surveillance that plaintiff was in fact working at the club and was in the immediate vicinity of her computer terminal when the sessions were fraudulently reinstated and pulled.  Cornelia Hobbie, the only other person who knew the other cashier code, was not present at the fitness club at the time the sessions were reinstated and pulled.

Furthermore, Mauro Maietta, who shared an office with plaintiff, did not work on any of the dates in question and was not seen on the surveillance video.  Additionally, the investigation revealed that in any event he did not have access to Ms. Hobbie's cashier code.

Based on these facts, Equinox came to the logical conclusion that plaintiff was the only one who could be responsible for the theft and a legitimate business decision was reached that plaintiff's employment should be terminated.  By way of this lawsuit, plaintiff has failed to provide any evidence that would even remotely suggest that Equinox was motivated by any discriminatory animus or any other unlawful motivation when it terminated her employment. Accordingly, all of her remaining claims must be dismissed with prejudice.

## STATEMENT OF FACTS

Accompanying this motion is Equinox and the individual defendants' undisputed statement of facts pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

## ARGUMENT

### I.

### SUMMARY JUDGMENT STANDARDS
### FOR EMPLOYMENT DISCRIMINATION ACTIONS

It is well established that summary judgment is available to defendants in employment discrimination actions. *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000). On a motion for summary judgment, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated [against the plaintiff] remains at all times with the plaintiff." *Bernard v. JP Morgan Chase Bank N.A.*, 2010 WL 423102, *6 (S.D.N.Y. Feb 5, 2010). Importantly, "[t]o get to the jury, it is not enough…to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination." *Weinstock v. Columbia University*, 224 F.3d at 42.

If the plaintiff fails to demonstrate each and every element of their *prima facie* case, summary judgment is appropriate. *Crews v. Trustees of Columbia University in City of New York,* 452 F.Supp.2d 504, 522 (S.D.N.Y. 2006). Without question, subjective speculation and supposition alone are insufficient to defeat a motion for summary judgment. As such, "[o]nly disputes over facts that might affect the outcome of the suit under the government law will preclude a grant of summary judgment. *Moccio v. Cornell University,* 889 F.Supp.2d 539, 568-69 (S.D.N.Y. 2012).

As fully set forth below, there is not a shred of competent evidence in the record to show that Equinox or any of the individual defendants discriminated against plaintiff on the basis of her gender or disability.

## II.

### PLAINTIFF'S CLAIM OF GENDER DISCRIMINATION MUST BE DISMISSED AS A MATTER OF LAW

#### A.      Plaintiff cannot state a *prima facie* case of gender discrimination

Plaintiff cannot state a *prima facie* case of gender discrimination under the NYCHRL. There is absolutely no evidence of circumstances giving rise to an inference of discrimination or discriminatory animus on the part of Equinox or any of the individual defendants.  Rather, the only evidence adduced in this case amply demonstrates that Equinox terminated plaintiff's employment based on its legitimate, non-discriminatory conclusion from its internal investigation that plaintiff stole from Equinox.

It is well-settled that in order to state a *prima facie case* of gender discrimination, a plaintiff "must demonstrate: (1) membership in a protected class; (2) qualifications for the position; (3) an adverse employment action; *and (4) circumstances giving rise to an inference of discrimination.*"  *Moccio v. Cornell University,* 889 F.Supp.2d at 582. (*emphasis added.*)

If the plaintiff is able to carry this initial burden of demonstration, the burden "then shifts to the defendant to proffer a legitimate, non-discriminatory reason for the challenged employment action." *Bernard v. JP Morgan Chase Bank N.A.*, 2010 WL 423102 at *6.  If the defendant then demonstrates "clear and non-discriminatory reasons for its actions…the presumption of discrimination raised by the plaintiff's *prima facie* demonstration drops out of the picture." *Id.*  At that point, the burden shifts back to the plaintiff, who then must carry "the ultimate burden to demonstrate by a preponderance of the evidence that the articulated reason

offered by the defendant for the adverse employment action is merely a pretext for actual discrimination." *Crews v. Trustees of Columbia University in City of New York,* 452 F.Supp.2d at 521.

Given this legal standard and the evidence in this case, plaintiff's vacuous claim for gender discrimination must be dismissed.  Indeed, the record is entirely bereft of evidence to support the notion that Equinox, Maietta, Sanders, or Plotkin discriminated against plaintiff on the basis of her gender in any way.  *See*, *Id.* at 522 ("[plaintiff] has failed to proffer sufficient evidence that the circumstances of his termination create an inference of gender discrimination..." [and] "[w]hether the initial decision to keep [plaintiff's] theft confidential was a good business decision or not, it created no inference of discrimination...on the basis of gender"); *See also, Bernard v. JP Morgan Chase Bank N.A.*, 2010 WL 423102, *8 ("[n]othing in the record reveals an inference of gender discrimination. Plaintiff's immediate supervisor…is also a woman, and [p]laintiff admits that…her secondary supervisor never made any discriminatory comments relating to her gender...the other female member of [plaintiff's]…team…has not faced any disciplinary action…[n]or does [p]laintiff cite any instances of discrimination involving any other female…even though half of the twenty [employees with same position as plaintiff] at the time were female); *Moccio v. Cornell University*, 889 F.Supp.2d at 577-78 (plaintiff still failed to establish an inference of gender discrimination despite illustrating her supervisor's failure to conduct an investigation she requested regarding gender-based pay inequality and highlighting her supervisor's decision to give her a below-average pay increase); *See generally*, *Rosario v. Hilton Hotels Corp.,* 476 Fed.Appx. 900, 902 (2d Cir. 2012) (affirming dismissal of plaintiff's claim of gender discrimination where plaintiff "failed to demonstrate that he was dismissed under circumstances giving rise to an inference of gender discrimination.")

At her deposition, plaintiff offered nothing more than pure speculation and conjecture in support of her gender discrimination claim, and there is no other evidence to support any claim of gender discrimination anywhere in the record.   *Exh. C. at 142:2 – 6.*   For this reason, plaintiff has failed to state a *prima facie* case of gender discrimination and this claim must be dismissed.

## III.

### EQUINOX HAD A LEGITIMATE, NON-DISCRIMINATORY REASON FOR TERMINATING HER EMPLOYMENT

In any event, even assuming that plaintiff could demonstrate a *prima facie* case of gender discrimination (which she cannot), Equinox terminated plaintiff's employment for a legitimate and non-discriminatory reason, i.e. its legitimate belief that she stole from Equinox.

As described above, Equinox conducted a thorough investigation into the fraudulently pulled personal training sessions—which, as an initial matter, it was under no obligation to do because plaintiff was an employee at will—and nevertheless arrived at the legitimate and inescapable conclusion that plaintiff was stealing from Equinox.   *Exh. E. at 25:14-21; 51:15 – 20; Exh. F. at 57:12 – 58:2;  See, Crews v. Trustees of Columbia University in City of New York,* 452 F.Supp.2d at 523 ("[e]ven assuming a *prima facie* case of [discrimination], [defendant] produced a legitimate nondiscriminatory reason for [plaintiff's] termination, namely his admitted theft"); *See also, Moccio v. Cornell University,* 889 F.Supp.2d at 580-81 ("[d]efendants have…articulated a legitimate, non-discriminatory reason for terminating [plaintiff]: her entire team was terminated as a part of a reduction in force that was implemented due to well-documented budgetary shortfalls"); *Brown v. The Pension Boards*, 488 F.Supp.2d at 406 ("[e]ven if [plaintiff] had established a *prima facie* case...[p]laintiff's [violation of company policy] provided a reasonable basis to terminate his employment"); *Hart v. New York University Hospitals Center*, 2011 WL 4755368 at *8 ("[e]ven if [plaintiff] had established a *prima facie*

case of…discrimination, [defendant] had a legitimate, non-discriminatory reason for his termination: [Plaintiff], who had an unsatisfactory disciplinary history, threatened and cursed at the Senior Administrative Director of the Department when he would not return [p]laintiff to work in a position that was not vacant, for which [p]laintiff was not qualified, and for which he had already been turned down); *Jain v, McGraw-Hill Companies, Inc.*, 827 F.Supp.2d at 277 ("defendants have met their burden of identifying a legitimate, nondiscriminatory reason for plaintiff's termination…[where] plaintiff had a history of repeated poor performance reviews, and had been subject to several specific, even dire warnings regarding her work performance"); *Bernard v. J.P. Morgan Chase Bank N.A.,* 2010 WL at *10 ("[a]ssuming…[p]laintiff established a *prima facie* case of discrimination, [p]laintiff still cannot prevail on her gender…discrimination claims because [d]efendant has proffered a legitimate, non-discriminatory reason for [p]laintiff's termination…[d]efendant provided testimony from [p]laintiff's superiors, the Written Warning, her annual review, and the termination memo, which all indicate that [p]laintiff's employment was terminated because she did not reach the specified sales benchmarks…")

A thorough investigation was conducted into plaintiff's suspected illegal session pulling in August of 2011.  The red flags were raised and the investigation was triggered when it was discovered that several personal training sessions were pulled for a single client in the same day Exh. D. at 23:13 – 24:5, which is highly unusual as most members usually will work out with a trainer just once, and sometimes maybe twice in a day.  As part of the investigation, Sanders requested that Equinox's Information Technology ("IT") department generate a written report demonstrating, among other things, the dates on which the personal training session vouchers were reinstated and/or pulled, the identity of the member for whom the vouchers were pulled, as

well as the identity of the person by whom the vouchers were pulled and the identity of the computer terminal at which the vouchers were pulled (the "IT Report"). *Exh. E. at 21:7 – 22:9.*

Indisputably, the IT Report illustrates that expired personal training session vouchers were improperly reinstated and then "pulled" ***in plaintiff's office, at plaintiff's computer, using two individualized cashier codes to which only plaintiff had access.  Exh. F. 76:7 – 9; Exh. E. 29:13 – 25; Exh. I.*** Sanders thereafter enlisted the assistance of numerous other Equinox employees to investigate the matter and corroborate the findings of the IT investigation. *Exh. F. at 73:18 – 25.* Sanders and Plotkin reviewed video surveillance footage and were able to confirm that it was only the plaintiff who was in the vicinity of her office when the expired personal training sessions were reinstated and pulled. *Id. at 80:12 – 81:3.* Indeed, plaintiff admitted to Sanders and Plotkin that no one else was in her office at the time when the sessions were reinstated and pulled *Id. at 62:14 – 23.* This video surveillance footage also corroborated the fact that Maietta was not physically present in the building when the sessions were misappropriated, which was further corroborated by the fact that Mr. Maietta was not scheduled to work on any of those days. *Exh. E. at 123:24 – 124:9; Exh. C. at 57:10 – 14.* Significantly, an individual must be physically present in the health club in order to utilize her cashier code to either reinstate or pull a personal training session. *Exh. E. at 165:14 – 166:6.*

In addition to viewing the video surveillance footage, Sanders also individually questioned and investigated Maietta and Hobbie and believed that neither one could have pulled the sessions, especially in light of the facts that they were not working at those times nor seen on the video surveillance. *Exh. E. at 122:12 – 123:23; 153:16 – 22.* On the other hand, when plaintiff herself was questioned during the investigation, she could not offer any explanation whatsoever as to how the personal training session vouchers could have been reinstated and then

"pulled" in her own office, at her own computer, using her and Hobbie's cashier codes, without her having any involvement whatsoever. In any event, throughout the entire investigation, it was clear to all who were involved that the evidence ascertained pointed squarely and solely at plaintiff's guilt. *Exh. F. at 61:12 – 16; 82:24 – 83:2.*

The circumstances surrounding Equinox's termination of plaintiff's employment infer that an objective, well-documented investigation transpired in response to plaintiff's terminable conduct. Indeed, even plaintiff herself testified:

> Q.     Was it a serious offense for an employee to record personal training sessions that wasn't actually performed?
>
> A.     Yes.
>
> -     -     -
>
> Q.     Would you say illegally pulling sessions is an issue that would warrant the termination of an employee's employment?
>
> A.     Yeah.

*Exh. C. at 124:16-19; 126:4 – 8.*

Unquestionably, therefore, the evidence mounted against plaintiff provided a reasonable basis for Equinox to terminate her employment. *Brown v. The Pension Boards*, 488 F.Supp.2d at 406. Discriminatory animus was and continues to be entirely absent from the equation. Accordingly, any presumption of gender discrimination raised by plaintiff's purported *prima facie* case must drop out of the picture. *Bernard v. JP Morgan Chase Bank N.A.*, 2010 WL 423102 at *6.

All things considered, plaintiff cannot even demonstrate a *prima facie* case of gender discrimination. In any event, there is certainly no evidence to demonstrate that Equinox's

thorough investigation and eventual termination of plaintiff's employment based on Equinox's legitimate conclusion that she was stealing was merely a pretext for actual discrimination.  As such, plaintiff's claim for gender discrimination must be dismissed as a matter of law.

## IV.

### PLAINTIFF'S CLAIM OF DISABILITY DISCRIMINATION MUST BE DISMISSED AS A MATTER OF LAW

**A**.      **Plaintiff cannot state a *prima facie* case of disability discrimination**

In order to state a *prima facie case* of disability discrimination under the NYCHRL, a plaintiff "must demonstrate with evidence in the record that [he or she] was: (1) disabled under the statute; (2) performing [his or her] job satisfactorily; (3) was discharged; ***and (4) the discharge took place under circumstances that give rise to an inference of discrimination.***" *Hart v. New York University Hospitals Center*, 2011 WL 4755368, *6 (S.D.N.Y. Oct. 7, 2011). (*emphasis added.*)

If and only if "the plaintiff meets this initial burden will the burden then shift to the defendant to produce evidence that the adverse employment action was taken for some legitimate, non-discriminatory reason." *Brown v. The Pension Boards*, 488 F.Supp.2d 395, 405 (S.D.N.Y. 2007).  If the defendant articulates "a legitimate, non-discriminatory reason, then the presumption raised by Plaintiff's *prima facie* case is rebutted, and drops from the case. *Id.*

Lastly, the plaintiff is left with "the ultimate burden to demonstrate by a preponderance of the evidence that the articulated reason offered by the defendant for the adverse employment action is merely a pretext for actual discrimination." *Id.*

Here, as demonstrated by plaintiff's deposition testimony, her claim for disability discrimination is based upon nothing more than pure speculation:

Q.    Now you've alleged in this lawsuit that Equinox unlawfully terminated you because of your cancer treatment, so what is the factual basis for this belief?

A.    Because I didn't do what they accused me of doing and I believe they didn't want someone who looks sick in a health club.

Q.    Well, what's the basis for your belief that they didn't want someone who was sick in the health club?

A.    Because I did nothing else wrong and that was the only changing factor on how I was.

*Exh. C. at 113:11 – 24.*

In fact, plaintiff's testimony further demonstrates that there is simply no evidence of discriminatory animus on the part of Equinox or any of the individual defendants:

Q.    Did Mr. Maietta ever make any mention about your appearance?

A.    Not that I can recall.

Q.    Did Mr. Sanders ever make any mention of your appearance?

A.    Not that I recall, but he did mention how I tired I looked from time to time and he actually I do recall him buying some cream for my sores because he noticed it (indicating).
*Exh. C. at 106:13 – 22.*
-      -      -
Q.    Did you ever hear Mr. Maietta say anything negative about your cancer or your treatment?

A.    No.

Q.    Did anyone ever tell you that Mr. Maietta said anything negative about your cancer or your treatment?

A.    No.

11

Q.      Did you ever hear Liz Minton say anything negative about your cancer or your treatment?

A.      No.

Q.      How about David Harris?

A.      I had very little contact with David Harris, no.

Q.      How about Joe Matarazzo?

A.      No.

Q.      How about Matthew Plotkin?

A.      No.

*Id. at 112:16 – 113:10*
-     -     -
Q.      At any time during that meeting, did you ever complain that you were being unlawfully terminated because of your cancer or your related treatment?

A.      No.

*Id. at 141:10 – 14.*
-     -     -
Q.      Prior to the date of the termination of your employment, did you ever complain to anyone at Equinox that you were being unlawfully discriminated against because of your cancer or your cancer treatment?

A.      No.
*Id. at 141:19-25.*

There is no other evidence in the record to suggest any basis that plaintiff was discriminated against because of her alleged medical treatment.  *See, Gioia v. Forbes Media LLC*, 501 Fed.Appx. 52, 55 (2d Cir. 2012) (plaintiff failed to present a *prima facie* case where

"there is no evidence that…the supervisors who made the decision to lay off [plaintiff]…had any knowledge of [plaintiff's] health insurance claims or claim history" [and] "[n]othing in [the record] suggests an intent on the supervisors' part to terminate [plaintiff] in order to cut health care costs"); *See also, Hart v. New York University Hospitals Center*, 2011 WL 4755368 at *7 (plaintiff failed to state a *prima facie* case where "[plaintiff's] claim of discriminatory intent is undercut by his own testimony" admitting that neither plaintiff nor [his superior] ever even mentioned plaintiff's disability during the heated meeting that resulted in plaintiff's termination); *Brown v. The Pension Boards*, 488 F.Supp.2d at 404-07 (plaintiff failed to state *prima facie* case where "[t]he record reveals no connection between [plaintiff's] alleged disabilities and [plaintiff's] termination" [and] "[plaintiff has submitted no direct evidence that anyone [employed by defendant] knew [plaintiff] was HIV positive); *See generally, Jain v. McGraw-Hill Companies, Inc.*, 827 F.Supp.2d 272 (S.D.N.Y. 2011) ("…a reasonable trier of fact could not conclude from the evidence presented that defendants' decision to terminate [plaintiff] was motivated by discriminatory intent...").

For these reasons, plaintiff's claim of disability discrimination must be dismissed.

## V.

### PLAINTIFF CANNOT PROVE DISABILITY DISCRIMINATION BECAUSE EQUINOX HAD A LEGITIMATE, NON-DISCRIMINATORY REASON FOR TERMINATING HER EMPLOYMENT

As set forth more fully in Section III, even assuming plaintiff has carried her initial burden of demonstrating a *prima facie* case of disability discrimination (which the record clearly indicates that she cannot), Equinox has articulated a legitimate, non-discriminatory reason for terminating plaintiff's employment.

Thus, any presumption of disability discrimination raised by plaintiff's purported *prima facie* case of disability discrimination must drop out of the picture. *Bernard v. JP Morgan Chase Bank N.A.*, 2010 WL 423102 at *6.

As argued above in Section III with regards to pretext, plaintiff cannot even demonstrate a *prima facie* case of disability discrimination.   Thus, plaintiff cannot possibly posit that Equinox's well-articulated reason for the termination of her employment was merely a pretext for actual discrimination.

## VI.

## PLAINTIFF'S DISABILITY AND GENDER DISCRIMINATION CLAIMS ARE PRECLUDED BY THE "SAME ACTOR" INFERENCE

The factual set of circumstances of this instant action presents a textbook opportunity for the application of the "same actor" inference.

The "same actor" inference is applied in situations where "the person who made the decision to fire [is] the same person who made the decision to hire…" *Colon v. Trump Intern. Hotel & Tower*, 2011 WL 6092299, *8 (S.D.N.Y. Dec. 7, 2011).   In such situations, "it is difficult to impute to [him or her] an invidious motivation that would be inconsistent with the decision to hire." *Id.*   Further, "where the termination occurs within a relatively short time after the hiring, there is a strong inference that discrimination was not a motivating factor in the employment decision."   *Dixon v. International Federation of Accountants*, 2010 WL 1424007, *6 (S.D.N.Y. Apr. 9, 2010).

The record reveals that Plotkin was intricately involved in both the recommendation to hire plaintiff and the recommendation to ultimately terminate plaintiff's employment.   *Exh. F. at 133:21 – 134:4; 144:17 – 19.*   Importantly, plaintiff's employment was terminated within eight months of her hire date. *See, Dixon v. International Federation of Accountants,* 2010 WL

14

1424007 at *6 (noting that the sufficiently short period of time between individual defendant supervisor's recommendation that plaintiff be hired and the same individual defendant supervisor's recommendation that she be terminated raises a strong inference against discriminatory animus); *Colon v. Trump Intern. Hotel & Tower*, 2011 WL 6092299 at *8 (reasoning that any inference of discriminatory intent is undercut by the fact that individual defendant supervisor was involved with the hiring of plaintiff and then was involved in terminating her three months later); *and, Figueroa v. New York Health and Hospitals Corp.,* 500 F.Supp.2d 224, 236 (S.D.N.Y. 2007) (holding that "the same-actor inference precludes any inference of discrimination…[where the] plaintiff alleges discrimination at the hands of [individual defendant supervisor], the same woman who approve of her promotion.")

As Plotkin was a primary force in both the hiring and firing of plaintiff eight months later, it cannot be imputed to either him or Equinox "an invidious motivation that would be inconsistent with [his] decision to hire." *Colon v. Trump Intern. Hotel & Tower*, 2011 WL 6092299 at *8.   Indeed, the record also reveals that Plotkin *did not even know* plaintiff was undergoing treatment for cancer while she was employed by Equinox.  *Id. 119:3 – 6.*

Based on the foregoing, plaintiff cannot establish a claim of discrimination based on gender or disability.

## VII.

## PLAINTIFF'S CLAIM OF HOSTILE WORK ENVIRONMENT UNDER THE NYC HUMAN RIGHTS LAW MUST BE DISMISSED AS A MATTER OF LAW

A.     **Plaintiff Was Not Treated Less Well Than Other Employees Because Of Her Gender**

In order for plaintiff's claim to survive this instant motion for summary judgment, there must be a triable issue of fact as to whether plaintiff had been treated *less well* than other

employees ***because of*** her gender. *Davis-Bell v. Columbia University*, 851 F.Supp.2d 650, 671 (S.D.N.Y. 2012) (*emphasis added*).  Even if plaintiff can raise a fact issue as to whether she suffered an objectively hostile work environment under the NYCHRL's "different treatment" standard, she still must show that the mistreatment she suffered "was ***motivated by [d]efendants' discriminatory animus***." *Id.* at 675. (*emphasis added.*)

Plaintiff's claim for hostile work environment must fail as a matter of law.  The record does not contain any evidence to suggest that plaintiff was treated differently in any respect, much less evidence to suggest that plaintiff was subjected to a hostile work environment ***because of*** her gender.   *See, Davis-Bell v. Columbia University*, 851 F.Supp.2d at 675 (plaintiff failed to withstand defendant's motion for summary judgment where "[p]laintiff never asserts that anyone ever made derogatory comments to her that ridiculed or insulted her because of her gender"); *Price v. Mount Sinai Hosp.*, 2010 WL 4910218, *6 (S.D.N.Y. Nov. 23, 2010) (plaintiff failed to raise a triable issue of material fact where she had "no memory of any supervisor making any comment about any employee's…gender"); *Ortiz-Moss v. New York City Dept. of Transp.*, 623 F.Supp.2d 379, 403 (S.D.N.Y. 2008) (plaintiff failed to demonstrate that she was subjected to a hostile work environment where her "only evidence of a sexually-hostile environment [is] a single crude remark and a piece of so-called pornography found at a printer…").

Without a single shred of competent evidence to suggest that plaintiff was subjected to a hostile work environment because of her gender, plaintiff's claim for hostile work environment cannot possibly withstand this motion and it must be dismissed as a matter of law.

**B.     Plaintiff Was Not Treated Less Well Than Other Employees Because Of Her Disability**

There is likewise no evidence to suggest that plaintiff was treated differently from other employees ***because of*** her disability.

Indeed, as set forth more fully in Section IV above, plaintiff cannot point to a single instance of mistreatment because of disability aside from her own speculative suppositions. *Exh. C. at 113:11 – 24.* Plaintiff not only testified to the fact that most employees ***did not even know*** of her disability (*Id. at 103:2 – 5),* plaintiff also testified to the fact that the employees ***who did know*** of her disability never made any negative or derogatory comments regarding her cancer. *Id. at 106:13 – 22; 112:16 – 113:10; See also, Davis-Bell v. Columbia University*, 851 F.Supp.2d at 675.

As such, plaintiff's claim of a hostile work environment based on her disability is entirely without merit and must be dismissed as a matter of law.

**VIII.**

**PLAINTIFF'S CLAIM OF AIDING AND ABETTING
GENDER DISCRIMINATION UNDER THE NYC HUMAN
RIGHTS LAW MUST BE DISMISSED AS A MATTER OF LAW**

Under the NYCHRL, before accessorial liability can be found as to an alleged aider and abettor of unlawful discrimination, "liability ***must first be established as to the employer/principal.***" *Jain v. McGraw-Hill,* 827 F.Supp.2d at 276-77. (*emphasis added.*)

As set forth above, there is no evidence in the record to support a *prima facie* case of gender discrimination under the NYCHRL. (*See*, Section II.)  In any event, plaintiff has utterly failed to rebut Equinox's legitimate and non-discriminatory reason for their termination of her employment. (*See,* Section III.)

As such, Sanders could not have aided and abetted Equinox in gender discrimination because Equinox did not discriminate against plaintiff because of her gender.  *See, Davis-Bell v. Columbia University*, 851 F.Supp.2d at 688 (if "the…NYCHRL claim [is] not viable against [p]laintiff's employer, [it is] not viable against the individual defendants"); *See also, Hopper v. Banana Republic, LLC,* 2008 WL 490613, *4 (S.D.N.Y. Feb. 25, 2008) ("[s]ince summary judgment for [d]efendants is granted on [plaintiff's] underlying [NYCHRL and NYSHRL] claims, [d]efendant's motion for summary judgment is also granted on the aiding and abetting claims.")  Accordingly, plaintiff's claim against Sanders must be dismissed as a matter of law.

## IX.

### PLAINTIFF'S CLAIM OF AIDING AND ABETTING A HOSTILE WORK ENVIRONMENT UNDER THE NYC HUMAN RIGHTS LAW MUST BE DISMISSED AS A MATTER OF LAW

For exactly the same reason set forth above in Section VIII, Sanders cannot possibly be held liable for aiding and abetting a hostile work environment.

The record is utterly devoid of evidence suggesting that plaintiff was treated differently from other employees or that she suffered any mistreatment because of her gender or disability. (*See*, Section VII.)

As such, Sanders could not have aided and abetted in creating a hostile work environment under the NYCHRL because Equinox did not subject plaintiff to one. *See, Davis-Bell v. Columbia University*, 851 F.Supp.2d at 688; *Hopper v. Banana Republic, LLC,* 2008 WL 490613 at *4.  Thus, plaintiff's claim against Sanders must also be dismissed as a matter of law.

## X.

## PLAINTIFF'S CLAIM OF TORTIOUS INTERFERENCE
## WITH A CONTRACT MUST BE DISMISSED AS A MATTER OF LAW

**A.**   **Mauro Maietta Did Not Act Outside The Scope of His Authority**

Plaintiff cannot point to a single instance where Maietta acted outside the scope of his employment while purportedly interfering with plaintiff's employment contract with Equinox. Thus, plaintiff's claim is fatally deficient and must be dismissed as a matter of law.

While an at-will employee may be able to maintain a tortious interference claim in "certain limited situations" against a co-employee, a co-employee does not qualify as a third-party individual susceptible to a tortious interference claim unless it can be demonstrated that the co-employee acted outside the scope of his or her authority. *Albert v. Losken,* 239 F.3d 256, 274 (2nd Cir. 2001); *Sullivan v. Brodsky,* 2009 WL 2516838, * 4 (S.D.N.Y. Aug. 17, 2009).

Here, there is absolutely no evidence in the record that Maietta ever acted outside the scope of his employment. *See, Thompson v. Bosswick*, 855 F.Supp.2d 67, 88 (S.D.N.Y. 2012) ("[a]lthough the [p]laintiff alleges that [co-employee] misinformed [employer] about [plaintiff's] alleged improprieties, there is no evidence to suggest that, in doing so, [co-employee] was acting outside his scope of his employment with the [employer]"); *Sullivan v. Brodsky,* 2009 WL 2516838 at *5 (plaintiff failed to offer "an evidentiary basis for a reasonable trier of fact to determine that [the co-employees'] participation in [p]laintiff's performance evaluation was in fact a policy violation, that it otherwise exceeded the scope of their authority, or that they were motivated by favoritism or malice"); *Donofrio-Ferrezza v. Nier*, 2005 WL 2312477, *17 (S.D.N.Y. Sep. 21, 2005) ("statements made by [the co-employees] that allegedly interfered with plaintiff's employment relationship were made during the course of a meeting…[at which]

defendants apparently had the right to attend…and express their views on plaintiff's prospect as a tenured professor.")

For these reasons, plaintiff's claim against Maietta must be dismissed as a matter of law because Maietta, as plaintiff's former co-worker, is not legally susceptible to a tortious interference claim.

## XI.

## PLAINTIFF'S CLAIM OF TORTIOUS INTERFERENCE WITH THE RIGHT TO CONDUCT BUSINESS MUST BE DISMISSED AS A MATTER OF LAW

### A.   Mauro Maietta Did Not Employ "Wrongful Means" In Any Of His Actions

Just like the rest of plaintiff's vacuous claims, there is no evidence in the record to suggest that Maietta employed wrongful means in order to interfere with plaintiff's prospective economic advantage.

In order to make out a *prima facie* of tortious interference with prospective economic advantage, a plaintiff must demonstrate: "(1) that [he or she] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship…" *Friedman v. Coldwater Creek, Inc.*, 321 Fed.Appx. 58 (2d Cir. 2009).

If a defendant does not act solely out of malice and their conduct does not amount to a crime or an independent tort, a defendant may still be liable if he or she employed "wrongful means." *Id.* at 59-60.  However, there is a heightened evidentiary standard to adequately show a *prima facie* case of tortious interference with prospective economic advantage which surpasses that of what is required to demonstrate a *prima facie* case of tortious interference with a contract. *Boehner v. Heise*, 734 F.Supp.2d 389, 405 (S.D.N.Y. 2010)

As argued above in Section X, there is absolutely no evidence to suggest that Maietta ever engaged in any conduct that was outside the scope of his employment.  *See, Friedman v. Coldwater Creek, Inc.*, 321 Fed.Appx. at 60 (no claim for tortious interference with prospective economic advantage where plaintiff only demonstrated that "[individual defendant] falsely informed plaintiff's employer that she had previously discussed plaintiff's rude and inappropriate behavior with plaintiff before calling his employer"); *See also, Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002) (record simply bereft of any evidence that [defendants] either acted solely to injury [plaintiff] or used improper means to do so" where there was only verbal encouragement from two of the defendants to avoid lending to plaintiff and outright skepticism with regards to the conduct of the other defendant).

As such, plaintiff's claim must be dismissed as a matter of law.

### CONCLUSION

Based on the foregoing, it is respectfully requested that (i) each and every claim for relief being asserted by plaintiff against defendants be dismissed in their entirety with prejudice, pursuant to Rule 56 of the Federal Rules of Civil Procedure; and (ii) the Court grant Defendants any and all such further relief as the Court may deem just and proper.

Dated: October 25, 2013
New York, New York

Respectfully submitted,

LAROCCA HORNIK ROSEN
GREENBERG & BLAHA LLP

By: _____
Lawrence S. Rosen (LR-8027)
Patrick McPartland (PM-4255)
40 Wall Street, 32nd Floor
New York, New York 10005
T: 212-530-4822, 4837
Email: lrosen@lhrgb.com / pmcpartland@lhrgb.com

*Attorneys for Defendants*

21