**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------X

KERRY ASHDOWN,

*Plaintiff*,

*v*.

EQUINOX *a/k/a*
EQUINOX FITNESS CLUB *and incorporated as*
EQUINOX HOLDINGS, INC.,
MAURO MAIETTA,
LAWRENCE SANDERS,
MATT PLOTKIN *a/k/a* MATTHEW PLOTKIN,

*Defendants*.

--------------------------------------------------------------X

**13 CV 1374 (HB)(GWG)**

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF PURPORTEDLY UNDISPUTED FACTS PURSUANT TO L. CIV. R. 56.1**

Pursuant to L. CIV. R. 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiff Kerry Ashdown respectfully submits the following responses and objections to Defendants' Statement of Undisputed Facts pursuant to L. CIV. R. 56.1.

Plaintiff respectfully requests that, pursuant to FED. R. CIV. P. 56(d), Defendants' refusal to comply with discovery and failure to issue fulsome production prevent summary judgment. *See, e.g., Sanders Dep*. 88:7–17. Defendants admit that their participation in the gathering of evidence was careless, haphazard, and incomplete. *Id*. To the extent that Plaintiff must still attempt to oppose Defendants' alleged material facts with incomplete discovery, she respectfully submits the following.

| **Defendant's Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 1. Plaintiff was employed by Equinox as an at-will employee for the position of Personal Training Manager ("PTM") from January of 2011 through September of 2011. Plaintiff was stationed at the fitness club located on Prince Street, New York, New York (the "Equinox Soho Club"). *See Deposition Transcript of Kerry Ashdown* annexed as *Ex. C* to the *Declaration of Lawrence Rosen*, dated October 25, 2013 (the "*Rosen Decl.*") at 35:22–36:2; 36:13–22; 138:21–25. | Plaintiff admits. |
| 2. Defendant Mauro Maietta ("Maietta") has been employed by Equinox since late 2007. During the time of plaintiff's employ, Maietta held the position of Fitness Manager ("FM") at the Equinox Soho Club. *See Deposition Transcript of Mauro Maietta* annexed as *Ex. D* to the *Rosen Decl.* at 76:10–13; *Ex. A* at 52:20–53:8. | Plaintiff admits. |
| 3. Defendant Lawrence Sanders ("Sanders") has been the General Manager of the Equinox Soho Club since 2010. Sanders directly supervised plaintiff throughout the course of her employment at the Equinox Soho Club. *See Deposition Transcript of Lawrence Sanders* annexed as *Ex. E* to the *Rosen Decl.* at 84:7–10; 85:8–11; 158:3–5. | Plaintiff admits. |

| Defendant's Alleged Material Facts | Plaintiff's Response |
|---|---|
| 4. Defendant Matthew Plotkin ("Plotkin") has been employed by Equinox since 1995. During the time of plaintiff's employ, Plotkin held the position of Regional Director. As Regional Director, Plotkin was in charge of overseeing the general managers and staff of the 7 Equinox fitness clubs within his "region," including the Equinox Soho Club. *See Deposition Transcript of Matthew Plotkin* annexed as *Ex. F* to the *Rosen Decl*. at 42:8–11; 13:18–14:25; 16:2–19. | Plaintiff admits. |
| 5. Prior to commencing her employment at the Equinox Soho Club, plaintiff was interviewed by Joseph Matarazzo ("Matarazzo"), the National Director of Personal Training Operations, Elizabeth Minton ("Minton"), the National Director of Personal Training Development, Matthew Plotkin, and Lawrence Sanders. *Id*.; *Id*. at 46:2–4; *Id. at* 48:14–17; *see Deposition Transcript of Joseph Matarazzo* annexed as *Ex*. *G* to the *Rosen Decl*. at 23:7–15; *Ex*. *C*. at 37:24–38:4; *Id*. at 37:10–13. | Plaintiff denies that those identified in ¶ 5 include individuals with whom she interviewed prior to the commencement of her employment with Defendants. Plaintiff did not interview with Defendant Sanders or Defendant Plotkin. *Ashdown Dep.* 35:13–16. |
| 6. Plaintiff and Maietta worked with one another at the Equinox Soho Club on a daily basis and they shared an office. *Id*. at 54:13–17. | Plaintiff denies that they "worked with one another." Plaintiff supervised Defendant Maietta and he refused to acknowledge her role. *Maietta Dep*. 41:14–21; *see also id*. 164:6–17; *Plotkin Dep*. 170:11–13. Plaintiff admits that she shared an office with Defendant Maietta. |
| 7. Plaintiff's duties and responsibilities as a PTM included managing the personal trainers, training the personal trainers on sales as well as helping the personal trainers generate new business and improve upon their existing business. *Id*. at 45:7–14. | Plaintiff admits that her duties and responsibilities included those listed in ¶ 7. They also included managing the rogue Defendant Maietta. *Ashdown Dep*. 54:8–12. |

| **Defendant's Alleged Material Facts** | **Plaintiff's Response** |
| --- | --- |
| 8. Maietta's duties and responsibilities as a FM included training and developing the personal training team and overseeing the personal trainers' client programming. Maietta also handled personal training payroll and reviewed the personal trainers' performance commission reports. *Id*. at 53:5–23; *Ex. D* at 16:10–23. | Plaintiff admits that Defendant Maietta's responsibilities as an FM included those listed in ¶ 8. |
| 9. Plaintiff informed Sanders and Maietta that she was diagnosed with ovarian cancer. *Ex. C* at 103:2–5. By all accounts, plaintiff was able to fully perform her job duties while being treated for her cancer. *Id*. at 105:10–20. No other individuals at Equinox were aware that plaintiff was undergoing treatment for her cancer. *Id*. at 35:17-21. | Plaintiff admits. |
| 10. Plaintiff admits that no one ever made any negative comments about her physical appearance while she was undergoing cancer treatments. *Id*. at 106:13–22; 112:16–113:10. | Plaintiff admits that no such comments were made to her face. Plaintiff denies that she did not look ill. *Maietta Dep*. 128:5–21. She was tired and was in pain. *Ashdown Dep*. 105:7–9; 106:18–22; 111:25–112:2. |
| 11. Plaintiff admits that she never reported any complaints of disability discrimination to anyone at Equinox. Plaintiff also admits that she never reported any complaints of disability discrimination to Equinox's Human Resources department or its toll free, 24/7 Ethics Hotline. *Id*. at 114:8-17. | Plaintiff admits. |

| **Defendant's Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 12. Plaintiff's performance commission report (the "Commission Report") for the time period of July 1st through August 31st demonstrates that plaintiff received commission payments for multiple personal training sessions for the same client on the same day. Plaintiff admits that she did not conduct the personal training sessions with that client. *Ex. C* at 132:12–133:14; *Ex. D* at 22:25–24:5; *see* the *Commission Report* annexed as *Ex. H* to the *Rosen Decl.* | Plaintiff denies the authenticity of Defendants' Commission Report. *See Rosen Decl.*, *Ex. H.*, Bates numbered EQX-6474–77; *Ashdown Dep.* 133:15–22 ("Q: Did you receive a commission for those sessions? A. No."). Defendant Plotkin issued sworn testimony that the Report constitutes "very, very concrete evidence . . . that Kerry [Ashdown] did this and now she was lying about it." *Plotkin Dep.* 77:14–17. When pressed however, Defendant Plotkin got the meanings of the spreadsheet columns as confused as we are about them and finally admitted that he only understood it "for the most part," then only "[t]o my knowledge," and then, "I'm not sure," and finally, when asked "And . . . Ms. Ashdown[] . . . doesn't appear as . . . having pulled . . . sessions, correct?" he answered "Correct." *Id.* 180:22–181:3. Moreover, it could have been altered. *Matarazzo Dep.* 93:7–9, 94:20–24. Plaintiff admits that she did not conduct the personal training sessions with that client. Plaintiff denies responsibility for any improper session pulling, but understood the gravity of the issue: "Q. Was it a serious offense for an employee to record personal training sessions that wasn't [*sic*] actually performed? A. Yes." *Ashdown Dep.* 124:5–19. |

| **Defendant's Alleged Material Facts** | **Plaintiff's Response** |
|---|---|
| 13. An Information Technology report (the "IT Report") demonstrates that multiple expired personal training sessions were reinstated and then "pulled" at plaintiff's computer terminal using two individualized cashier codes that only plaintiff had access to, her own and the cashier code of her subordinate, Cornelia Hobbie ("Hobbie"). *Ex. E* at 29:13–25; *Ex. F* at 193:12–194:12; *see* the *IT Report* annexed as *Ex. I* to the *Rosen Decl.* | Plaintiff denies that she has ever improperly pulled any sessions. *Ashdown Dep.* 124:5–19. The *IT Report* was not accurate and even Defendants were not able to adduce what its data meant. *Plotkin Dep.* 165:15–169:21. Defendants admit that Plaintiff was not the only individual with access to others' cashier codes—including Plaintiff's. *Sanders Dep.* 169:2–6. Plaintiff denies that only she had access to the code. *Id.* Defendants admit that supervisors have access to codes, which means that Defendant Sanders had access to Plaintiff's code. *Id.* Each employee with a cashier's code has access to that code. *Id.* Cornelia Hobbie worked under both Plaintiff **and** Defendant Maietta. *Sanders Dep.* 26:4–6. "[Y]es, you could believe that Cornelia [Hobbie] stole something for [Plaintiff]." *Id.* 28:21–22. Defendants admit that this is "**the** document" that Defendants Plotkin and Sanders reviewed in connection with Defendants' purported investigation into Plaintiff's alleged session pulling. *Plotkin Dep.* 164:7–11 (emphasis added). Furthermore, Plaintiff denies that the *IT Report* is in any way transparent or self-evident, even to Defendants. *Id.* 165:15–169:21. Defendants claim that Cornelia Hobbie was just as likely to be the perpetrator of the pulled sessions, but Plaintiff was terminated and Ms. Hobbie was promoted. *Sanders Dep.* 27:15–23. Summary judgment is inappropriate: Defendants claim both (i) the sessions were improperly pulled by only Plaintiff, *Plotkin Dep.* 76:8; and also that (ii) there were three (3) individuals who pulled sessions, *i.e.*, (i) Defendant Sanders; (ii) Cornelia Hobbie; and (iii) Plaintiff. *Id.* 166:16–25; 194:13–17. |

| Defendant's Alleged Material Facts | Plaintiff's Response |
|---|---|
| 14. The sessions were reinstated and "pulled" crediting plaintiff, Bobby Dwyer ("Dwyer"), and Ryan Hopkins ("Hopkins") with performing personal training sessions that they admittedly did not perform. The result was that plaintiff, Dwyer, and Hopkins received commission payments that they were not entitled to receive. *Ex. E* at 34:13–20; 37:24–38:8; 43:17–23; 37:20–23. | Plaintiff denies responsibility for any pulled sessions. *Ashdown Dep*. 124:5–19. Plaintiff received no compensation or commission for these sessions. *Id*. 133:15–22.<br><br>Plaintiff lacks sufficient information to confirm or deny whether some Bobby Dwyer or Ryan Hopkins (i) received corresponding payments; or (ii) whether Messrs. Dwyer and Hopkins "admittedly did not perform" such sessions.<br><br>Defendant failed to cite evidence that anyone was ultimately credited with commission payments in connection with the improperly pulled sessions. |
| 15. Sanders and Plotkin reviewed video surveillance footage on which they observed that only plaintiff was in the vicinity of her office when the sessions were reinstated and pulled. *Ex. F* at 80:15–81:3. They also observed that from the video surveillance Maietta and Hobbie were not present at the Equinox Soho Club when the sessions were reinstated and pulled. *Ex. E* at 123:24–124:9; 174:16–25. Maietta also was not scheduled to work on the days when the sessions were reinstated and pulled. *Ex. C* at 57:10–14. | Plaintiff denies. Defendant issued no such video. The video does not exist. *Sanders Dep*. 129:24–130:2. Defendants do not recall whom, if anyone at all, was present when the phantom video was viewed. *Id*. 125:7–23. But Defendant Sanders may—or may not—recall whether Plaintiff appeared in the video. *Id*. Plaintiff admits that although some time has passed, people do not forget whether they were alone when they reviewed evidence worthy of instigating a termination for stealing. Tellingly, Defendant Sanders consistently uses the singular, where Defendant Plotkin uses the plural. *Compare*, *e.g*., *id*. 124:7–9 ("Yes, **I** did [review the surveillance video]") *with Plotkin Dep*. 80:16–17 ("**We** sat in front of the monitor [to look at the video footage]"). Citations to Defendants' hearsay are insufficient for summary judgment. *See Evans v. Port Authority*, 192 F. Supp. 2d 247, 273 (S.D.N.Y. 2002). Finally, Plaintiff denies inasmuch as "vicinity" is unnecessarily vague. |

| Defendant's Alleged Material Facts | Plaintiff's Response |
|---|---|
| 16. Plaintiff admits that no one else was in her office at the time when the sessions were reinstated and pulled. *Ex. F* at 62:14–23. | This is ridiculous and nonsensical; Plaintiff denies and never could admit to Defendant Plotkin's hearsay. Plaintiff lacks information to confirm or deny who was where during the time that Defendants allege that Plaintiff purportedly pulled sessions. Even *arguendo* that Plaintiff were in her office during all of those times, **Defendant** denies that Plaintiff was the only individual modifying session records at that moment. *Plotkin Dep*. 166:2–4. The sole document that Defendants reviewed in connection with Plaintiff's termination seems to show (Defendants don't know either) that three (3) individuals benefitted from improper session pulling: (i) Robert Dwyer; (ii) Ryan Hopkins; and (iii) Kerry Ashdown. *Id*. Defendants purport that three (3) individuals pulled sessions for those individuals, namely (i) Defendant Sanders; (ii) Cornelia Hobbie; and (iii) Plaintiff. *Id*. 166:16–25; 194:13–17. Granting summary judgment would require an absence of disputed facts. The movants fail to even agree with themselves: **Defendants** concede that Plaintiff is not accused of pulling a single session for her own benefit. *Id*. 166:2–25; 194:13–17. But sometimes they say that she was terminated for stealing "[p]robably about 60 bucks." *Sanders Dep*. 34:23. Or "somewhere, a hundred bucks, somewhere around there." *Plotkin Dep*. 70:24–25. |

| Defendant's Alleged Material Facts | Plaintiff's Response |
|---|---|
| 17. Sanders questioned and investigated Maietta and Hobbie with regards to their involvement in the pulled-sessions incident. Sanders believed that neither one could have pulled the sessions. *Ex. E* at 122:12–123:23; 153:16–22; 123:24–124:9; 174:16–25. | Plaintiff denies *in toto*. Defendant Sanders admitted that he "had a conversation with [Cornelia Hobbie] and that's it." *Sanders Dep.* 153:23–25. He cites the phantom video in his conclusion that Ms. Hobbie was not present when the sessions were pulled. *Id.* 174:20–25. This however, is inadmissible. *See Evans*, 192 F. Supp. 2d at 273. Defendant Sanders even admits that "yes, you could believe that Cornelia [Hobbie] stole something for [Plaintiff]." *Sanders Dep.* 28:21–22. |
| 18. Plaintiff was questioned during the investigation and she did offer any explanation as to how the personal training sessions could have been reinstated and then pulled in her own office, at her computer, using her and Hobbie's cashier codes. [*Sic*]. Plaintiff only denied involvement. *Ex. F* at 85:3–21; 86:3–11; 185:24–186:11. | Plaintiff denies there was an investigation. Plaintiff further denies that she purportedly "only denied involvement." *Sanders Dep.* 52:5–7. *Plotkin Dep.* 82:9–23. Plaintiff offered to take a lie detector test. *Id.* 98:20–23; *Ashdown Dep.* 140:16–19. Plaintiff said that Defendant Maietta was guilty. *Id.* 140:22–24. Defendants' purported "investigation" was a sham anyway; Defendants admit that with some accusations and claims they simply ignored them and did not investigate. *See, e.g.*, *Sanders Dep.* 41:6–24. Or they "didn't investigate it right away." *Id.* 57:24–25. Or they waited a week before notifying anyone that an investigation was purportedly necessary. *Id.* 59:7–13. Or they thought she should investigate the accusations herself, but did not tell her. *Id.* 60:19–61:22. |

| Defendant's Alleged Material Facts | Plaintiff's Response |
|---|---|
| 19. On September 1, 2011, plaintiff's employment was terminated by Plotkin and Sanders in Sanders' office. *Ex. F* at 97:7–10. Plaintiff was told that she was being terminated because it was believed that she was stealing from Equinox. *Ex. E* at 51:15–24. Plaintiff admits that illegally pulling sessions is an issue that would warrant the termination of an employee's employment. *Ex. C* at 126:4–8. | Plaintiff admits that she "was told that she was being terminated because it was believed that she was stealing from Equinox." Even *arguendo* that Defendants' allegations were true, **Defendants** admit that improper session pulling does **not** necessarily warrant termination. "I don't think that would be black and white. I would want to understand the situation, what caused it." *Maietta Dep*. 66:7–9. "Our standard operating procedure, you start documenting with an employee, you usually start with a verbal warning, then the next step would be a written warning, then the next step would be a final warning and then a termination." *Plotkin Dep*. 23:20–25. "If one of my employees decided to . . . punch a member in the face . . . he's **most likely** going to be terminated." *Id*. 26:9–13 (emphasis added). "[A]ny theft . . . he'll **probably** be terminated." *Id*. 27:4–7 (emphasis added). "Q. And would you place Ms. Ashdown's conduct in the category that you mentioned earlier, the theft category? A. Yes, I would. Q. And that requires a termination, correct? A. **In most cases**, absolutely." *Id*. 71:4–10 (emphasis added). If Plaintiff had admitted to the behavior of which she was not culpable, but was accused, "maybe we would not have terminated her." *Id*. 72:6–16. "Matt Plotkin offered [Plaintiff] a job as he escorted [her] out of the building." *Ashdown Dep*. 142:18–19. Plaintiff admits that Defendants Plotkin and Sanders were present when her employment with Defendants was terminated and "believes it was September 1," 2011. *Id*. 138:25. |

| Defendant's Alleged Material Facts | Plaintiff's Response |
| --- | --- |
| 20. Plaintiff admits that she did not complain that she was being unlawfully terminated because of her cancer and/or gender during the termination meeting or that she ever made any prior complaint of unlawful discrimination during her employment with Equinox. *Id.* at 141:10–18. | Plaintiff admits. |

Dated: New York, New York
November 8, 2013

Respectfully submitted by:
THE HARMAN FIRM, PC
*Counsel for Plaintiff*

s/

Walker G. Harman, Jr. [WH-8044]
200 West 57th Street, Suite 900
New York, New York 10019
wharman@theharmanfirm.com