UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
KERRY ASHDOWN,                                              Index No. 13 CV 1374
                                                            (HB)(GWG)
                               Plaintiff,

      -against-

EQUINOX, *a/k/a*
EQUINOX FITNESS CLUB *and incorporated as*
EQUINOX HOLDINGS, INC.,
MAURO MAIETTA,
LAWRENCE SANDERS, and
MATT PLOTKIN *a/k/a* MATTHEW PLOTKIN,

                              Defendants.
-------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW

                              **LAROCCA HORNIK ROSEN**
                              **GREENBERG & BLAHA LLP**
                              40 Wall Street, 32nd Floor
                              New York, New York 10005
                              T:  212.530.4822 / 4837
                              *Attorneys for Defendants*

Defendants Equinox Holdings, Inc. d/b/a Equinox Fitness Club ("Equinox"), Mauro Maietta ("Maietta"), Lawrence Sanders ("Sanders"), and Matthew Plotkin ("Plotkin"), by their attorneys LaRocca Hornik Rosen Greenberg Blaha LLP, respectfully submit this memorandum of law in further support of their motion for summary judgment for an Order dismissing each and every claim for relief asserted against them by plaintiff Kerry Ashdown.

## PRELIMINARY STATEMENT

Contrary to the position advanced by the plaintiff in her opposition papers, the question on this motion is not whether Equinox is able to prove conclusively that plaintiff stole from the company (as would be akin to a prosecutor's burden in a criminal case). Rather, in the instant context the question is whether Equinox had good reason to believe that the plaintiff stole from the company and thus had a legitimate, non-discriminatory basis for firing her.

Equinox has amply demonstrated that at the time Equinox fired plaintiff it had good reason to believe that plaintiff was responsible for the theft. Plaintiff offers no evidence to the contrary in opposition to this motion and thus this lawsuit should be dismissed.

It is undisputed that a theft occurred at Equinox and that this theft constituted a terminable offense for the responsible Equinox employee. At least one other former male manager of Equinox who was suspected of engaging in identical wrongful conduct likewise had his employment terminated, and other Equinox employees have been terminated for theft. Plaintiff thus was treated no differently than any other employee caught stealing. Moreover, although Equinox had no legal obligation to do so it nevertheless voluntarily undertook to investigate the theft, including interviews of the plaintiff and other witnesses, and the examination of computer records and surveillance tapes. In the end, Equinox came to the

inescapable conclusion that plaintiff had indeed committed the theft and that her employment should be terminated as a result.

## ARGUMENT

### I.

### PLAINTIFF HAS FAILED TO DEMONSTRATE THAT EQUINOX DID NOT HAVE A GOOD FAITH BASIS TO TERMINATE HER EMPLOYMENT

Most fundamentally, plaintiff's claims fail because there is not a shred of evidence to suggest that Equinox did not have good reason to believe that she was responsible for the theft, much less that its real reason for terminating her employment was based on gender or her perceived disability.[1] *See e.g. Hargett v. N.Y.C. Trans. Auth.*, 640 F.Supp.2d 450, 475-76 (S.D.N.Y. 2009) (plaintiff, whose employment was terminated for purportedly sending inappropriate emails, failed to show evidence of pretext by claims that his email account may have been hacked by another employee where the relevant issue was "not whether [the employee] actually sent the emails…[but] whether the employer honestly believed that he sent the inappropriate emails"); *Oliveras v. Wilkins*, 2012 WL 3245494, *13 (S.D.N.Y. Jun. 26, 2012) (even if employer terminated plaintiff's employment based on the incorrect conclusion that plaintiff was the aggressor in a fight, "that error in and of itself would not allow one to infer a gender-based discriminatory motive underlying the resulting decision to terminate plaintiff").

Here, Equinox took appropriate steps to investigate an undisputed theft, which concluded that plaintiff—who financially benefitted from the theft, was believed to have had access to the

---

[1] Despite multiple discovery requests by Equinox, plaintiff did not produce a single page of medical records to corroborate her contention that she actually underwent any cancer treatment at all while she was employed by Equinox. In fact, a HIPAA authorization provided to obtain these purported records from Memorial Sloan Kettering was returned by the hospital with a letter stating that it had no record of plaintiff ever being a registered patient at the hospital. Equinox acknowledges, however, that plaintiff did tell Mr. Sanders and Mr. Maietta that she was being treated for cancer. As such, plaintiff's claim is correctly identified as a "perceived disability," which is consistent with her characterization of her claim in her opposition papers.

2

cashier codes necessary to conduct the theft, and was physically present at the club when the underlying unlawful transactions were performed on her own desk-top computer—was responsible for the theft. It is not Equinox's burden to demonstrate "beyond a reasonable doubt" or to any other standard that plaintiff was responsible for the theft to prevail on this motion. Instead, it merely needs to demonstrate that it had good reason to believe that plaintiff stole from Equinox. And, as demonstrated below, plaintiff has offered no evidence that would suggest that Equinox acted pretextually or used the theft as an excuse for gender or perceived disability discrimination.

### A.     Plaintiff's "surveillance video" argument is a Red-Herring, designed to mislead the Court, and in any event is wrong as a matter of law

Pursuant to Federal Rule of Evidence 1004, a party may present secondary evidence, including testimony, regarding the content of a lost or destroyed recording, so long as the recording was not lost or destroyed by that party in bad faith. Here, there is no allegation of spoliation of the surveillance video. In fact, it is not disputed that the tape was merely recorded over in the normal course of business. *See Rosen Moving Decl., Exh. F at 108:16 – 24 and Exh. E at 130:13 – 131:4.*

In any event, the testimony regarding what was seen on the surveillance video is corroborative in nature. Mr. Plotkin and Mr. Sanders reviewed the surveillance video to confirm what they already believed-- that Mauro Maietta, who was not scheduled to work on the dates in question, and Cornelia Hobbie, who was only at work for part of one of the days in question, could not have committed the theft because they were not present at the club at the time of the theft (unlike plaintiff). *See, Id., Exh. E at 32:16 – 24; 122:20 – 124:9; 174:16 – 176:2; Exh. F at 78:20 – 79:15; 159:10 – 22.*

Moreover, unlike plaintiff, who ***admitted*** to receiving commissions for personal training sessions that she never in fact conducted, neither Ms. Hobbie nor Mr. Maietta received any financial benefit from the theft. Nor did Equinox have any reason to believe that Ms. Hobbie or Mr. Maietta had access to the cashier codes that were used to commit the theft.[2] *See, Id., Exh. E* at 33:21 – 34:20; 37:16 – 23; Exh. F. at 150:4 – 23.

### B. Plaintiff Was Not Treated Any Differently Than Any Other Employee Who Was Believed to Have Committed a Theft

In her opposition, plaintiff also deliberately misapplies the standard for evaluating similarly situated persons. An employee can only be similarly situated to a co-employee when they both are "(1) subject to the same performance evaluation and discipline standards **and** (2) engaged in comparable conduct." *Barney v. Consolidated Edison. Co. of N.Y.*, 391 Fed.Appx. 993, 996 (2d Cir. 2010) (*emphasis added*) (employee who was believed to have intentionally entered false overtime data to receive additional pay was not similarly situated to employee who failed to review the overtime entries correctly and received no obvious compensation as a matter of law); *See also Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 568 (2d Cir. 2000) (employee terminated for engaging in a physical fight was not similarly situated to co-employees who used offensive words as a matter of law).

Here, the only Equinox employees that could be viewed as being similarly situated to the plaintiff would be those who were also believed to have committed a theft (or a more serious offense). As the record demonstrates, Equinox did in fact terminate the employment of employees who also committed thefts, including the employment of a male Personal Training Manager at the Equinox fitness club in Greenwich, Connecticut who was believed to be illegally

---

[2] In her opposition papers, plaintiff deliberately attempts to mislead this Court into believing that all managers had access to each other's cashier codes. This is untrue. There is no evidence that either Mr. Maietta or Ms. Hobbie had access to plaintiff's cashier code and plaintiff fails to point to anything in the record to the contrary.

4

pulling training sessions just like the plaintiff herein.[3] *See Rosen Decl., Exh. F at 55:14 – 56:10; 52:14 – 54:19; 57:11 – 20.* Mr. Maietta certainly cannot be deemed to be similarly situated to plaintiff, as he was never believed to have committed any theft or any other serious offense. *See Id., Exh. F at 170:21-171:6.* This is similarly true for Ms. Hobbie (who, in any event, shares the same gender as plaintiff).[4]

C.  **The Same Actor Inference Does Apply**

By plaintiff's own admission, she interviewed with Mr. Plotkin and Mr. Sanders prior to her commencing work at the Equinox Soho Club. *See Id., Exh. C annexed to the Rosen Decl. at 37:6 – 38:4.* Mr. Plotkin and Mr. Sanders also both testified that they were involved in the hiring of plaintiff for the position of Personal Training Manager at the club. *See Id., Exh. F at 133:21 – 134:4; Exh. E at 57:17 – 23.* Plaintiff's assertion that she had already been hired by Equinox as an employee does not negate the fact that she still needed to be interviewed by the managers overseeing the Soho Club (i.e. Mr. Sanders and Mr. Plotkin) in order to be placed in her position at that club. The fact that Mr. Plotkin and Mr. Sanders interviewed and agreed to place her at the Soho Club just several months before her employment was terminated precludes

---

[3] Mr. Plotkin did offer plaintiff the opportunity to apply for a position as a personal trainer (i.e. not personal training manager) at a different club after her employment was terminated. He testified that Mr. Sanders was sympathetic to plaintiff because she was in the United States on a work visa and Mr. Sanders wanted to offer her an opportunity to continue to make a living. *See Id., Exh. F at 113:13 – 23.* If anything, the fact that Equinox was willing to provide plaintiff with a second chance at another position demonstrates a lack of discriminatory animus. For instance, if, as plaintiff speculatively alleges, Equinox did not want her at the club because she looked ill, it certainly would not offer her a position as a personal trainer who would be directly training members and constantly visible on the club's fitness floor.

[4] Plaintiff falsely asserts that Mr. Sanders admitted that Ms. Hobbie illegally pulled the sessions. This was not his testimony, however. Rather, Mr. Sanders testified that the fact that Ms. Hobbie's cashier code was used could "possibly" lead one to conclude that she pulled certain sessions. However, as Mr. Sanders testified, Ms. Hobbie was not physically in the building when the theft at plaintiff's computer occurred and also did not receive any financial benefit from the theft (unlike plaintiff). Mr. Sanders thus had no reason to believe that Ms. Hobbie or anyone other than the plaintiff was responsible for the theft. *See Id., Exh. E at 32:16 – 24; 37:16 – 22; 174:16 – 25.*

any inference of discriminatory intent,[5] *especially with respect to Mr. Plotkin who undisputedly had no knowledge of plaintiff's alleged cancer treatment at the time of the termination*. *See Colon v. Trump Intern. Hotel & Tower*, 2011 WL 6092299 (S.D.N.Y. December 7, 2011)*; Rosen Decl., Exh. F at 118:9 – 23*.

## II.

### PLAINTIFF'S DISCRIMINATION AND TORT CLAIMS INVOLVING MAIETTA ARE MERITLESS

Finally, plaintiff spends much of her opposition papers attacking Mauro Maietta, her subordinate. As an initial matter, it is undisputed that Mr. Maietta had absolutely no role in the investigation or the decision to terminate plaintiff's employment for theft. *See Id., Exh. F at 73:18 – 25; Exh. E at 88:24 – 89:11; Exh. C at 139:2- 10*. On this point, plaintiff's allegation that Mr. Maietta "falsely accused" her of pulling the illegal sessions is specious and completely unsupported by the record. *See Id. Exh. E at 23:13 – 24:22*.

As part of his job duties, Mr. Maietta was required to review personal training commission reports for potential inaccuracies. *See Id. Exh. E at 24:11 – 22*. When reviewing commission reports he discovered that multiple personal training sessions were pulled on the same day for a member who was not training at the club and that the sessions were pulled by Ms. Ashdown. *See Id., Exh. D at 37:3-37:25*. After identifying this red flag, as was his job to do, Mr. Maietta simply reported it to Mr. Sanders and, by all accounts, had no involvement in the

---

[5] Plaintiff again falsely alleges that Mr. Sanders "has a documented history of inappropriate conduct towards other female employees." This too is untrue and unsupported by the record. Mr. Sanders had an isolated incident in 2009 well prior to plaintiff's employment where a female subordinate reported that Mr. Sanders made comments about a female employee's outfit and body that made her "uncomfortable." *See Id., Exh. E at p. 8:15 to 12:16*. Mr. Sanders was formally admonished by Equinox and never had another incident again. *See Id., Exh. E at 12; Exh. F at 87:4-88:20*. On this point, there is absolutely no evidence that Mr. Sanders ever discriminated against a female in favor of a male with respect to an employment decision, as reinforced by the very fact that he hired plaintiff to be the Personal Training Manager at his club. *See Id., Exh. E at 12, 57:17 – 23*.

subsequent investigation or the decision to terminate plaintiff's employment. *See Id. Exh. D at 47:13 – 48:1; 48:15 – 49:4.* He, thus, acted completely within the scope of his employment.

Plaintiff also alleges that Mr. Maietta engaged in other "wrongful conduct" towards her, which she alleges support her hostile work environment and tortious interference claims. For instance, she alleges that Mr. Maietta was "overly competitive." However, plaintiff also admits that Mr. Maietta was competitive with everyone on the personal training staff, which consisted of both men and women. *See Id., Exh. C at 60:17 – 20.* Moreover, there is nothing about "being competitive" that demonstrates that Mr. Maietta had any gender bias or that he ever acted outside of the scope of his employment.

Additionally, plaintiff asserts that Mr. Maietta told Mr. Sanders that plaintiff showed favoritism towards the male personal trainers versus the female personal trainers. Again, while this has nothing to do with gender, Mr. Sanders testified that he became aware of this alleged favoritism not just from Mr. Maietta, but also from the female personal training staff. *See Id. Exh. E at 72:17 – 21; Exh. D at 124:10 – 125:8.* Moreover, it was completely within the scope of Mr. Maietta's employment to report to Mr. Sanders about any potential divisions within the personal training staff.[6] There is also no evidence that Equinox terminated plaintiff's employment due to any alleged favoritism—she was terminated for theft.

Finally, with respect to the alleged "dummy email address," there is simply no evidence that Mr. Maietta ever created any "dummy email address" for plaintiff. As Mr. Maietta testified, he simply sent a couple of emails to plaintiff from his Blackberry on a single day, which apparently went to the wrong address or were never delivered. When he followed up with a

---

[6] Similarly, plaintiff makes an allegation that Mr. Maietta told Mr. Sanders that plaintiff was drinking with her staff. However, again, Mr. Sanders testified that Mr. Maietta was simply reporting what he had heard from the staff. *See Rosen Decl., Exh E 66:3 – 11.* Moreover, this shows no gender bias, and, again, plaintiff was terminated for theft (not for "drinking with her staff").

7

phone call to her at the club later that same day, he was transferred by the front desk to Mr. Sanders' office because that was where Ms. Ashdown was located at the time. *See Id., Exh. D at 127:22 – 129:9.* In any event, this allegation does not demonstrate any "gender bias." Further, plaintiff was terminated because of her theft, not based on any alleged non-responsiveness to Mr. Maietta.

The simple fact of the matter is that Mr. Maeitta and Ms. Ashdown had professional differences during their employment together. Mr. Maietta noted that plaintiff would often mistreat him and yell at him. *See Id., Exh. D at 138:24 – 139:17.* In fact, they both outlined their differences in emails to management. Notably, plaintiff's email does not make any mention of any alleged gender or other discriminatory biases on the part of Mr. Maietta, much less any devious scheme by Mr. Maietta to have her employment terminated. *See Id., Exh. C at 87:17 – 88:20; Exh. D at 138:24 – 139:17; McPartland Reply Decl., Exh. A and B.* **In fact, as plaintiff readily admits, she never once accused Mr. Maietta of discriminating against her based upon her gender until she commenced this lawsuit.** *See Plaintiff's Response to Equinox's Statement of Undisputed Facts at ¶20.*

In her opposition papers, plaintiff makes the conclusory assertion that Mr. Maietta engaged in this conduct because he did not "like being supervised by a woman." She fails to produce a single statement by Mr. Maietta evidencing any gender bias or any other evidence to support this speculative allegation. As such, plaintiff cannot sustain her hostile work environment claim. *See, Davis-Bell v. Columbia University*, 851 F.Supp.2d 650, 675 (S.D.N.Y. 2012) (summary judgment granted on hostile work environment claim under the NYCHRL where "[p]laintiff never [asserted] that anyone ever made derogatory comments to her that ridiculed or insulted her because of her gender…could not point to a single instance where

anyone said anything related to [her] sex…[and failed] to offer any evidence from which a reasonable juror could infer that any of the incidents in [the] case occurred because of plaintiff's gender").

Similarly, there is no evidence that Mr. Maietta ever acted outside the scope of his employment, much less acted with malice, so plaintiff's tortious interference claims against Mr. Maietta must also be dismissed. *See, Thompson v. Bosswick*, 855 F.Supp.2d 67, 68 (S.D.N.Y. 2012) ("[a]lthough the [p]laintiff alleges that [co-employee] misinformed [the employer] about [plaintiff's] alleged improprieties, there is no evidence to suggest that, in doing so, [co-employee] was acting outside his scope of his employment"). In any event, plaintiff's employment was terminated because of her alleged theft, not because of any allegations or conduct on the part of Mr. Maietta.

## CONCLUSION

Based on the foregoing, it is respectfully requested that (i) each and every claim for relief being asserted by plaintiff against defendants be dismissed in their entirety with prejudice, pursuant to Rule 56 of the Federal Rules of Civil Procedure; and (ii) the Court grant defendants any and all such further relief as the Court may deem just and proper.

Dated: November 15, 2013
    New York, New York

                                      Respectfully submitted,

                                      LAROCCA HORNIK ROSEN
                                    GREENBERG & BLAHA LLP

               By: _____
                      Lawrence S. Rosen (LR-8027)
                      Patrick McPartland (PM-4255)
                      40 Wall Street, 32nd Floor
                      New York, New York 10005
                      T: 212-530-4822, 4837
                      Email: lrosen@lhrgb.com / pmcpartland@lhrgb.com

                      *Attorneys for Defendants*